ESBER, Appellant,

v.

ESBER, Appellee.

[Cite as *Esber v. Esber* (1989), 63 Ohio App.3d 394.]

Court of Appeals of Ohio,
Medina County.

No. 1759.

Decided June 28, 1989.

*Gregory W. Harp,* for appellant.
*Bruce D. Parish,* for appellee.

BAIRD, Judge.

This cause came before the court upon the appeal of Michael Allen Esber of the trial court's increase of his child support payments. We affirm in part and reverse in part.

In 1981, Michael Esber and Carol Elaine Esber were divorced. At the time of the divorce, Carol was granted custody of their two minor children. Michael was ordered to pay child support in the amount of thirty-five dollars per week per child.

In July 1988, Carol filed a motion with the trial court for an increase in child support. Michael subsequently filed a motion for expanded visitation rights and for the dependency deduction for tax purposes.

A hearing was held before the referee. An *in camera* interview was held with the children, and both parties presented testimony. Following this hearing, the referee prepared a written recommendation. In this recommendation, the referee found that Michael had shown little interest in his children and that no restructuring of visitation was necessary. The referee further determined that the tax deduction issue should be decided pursuant to the prevailing regulations, and that since it constituted a division of property, the court lacked jurisdiction.

The referee also determined that Michael should pay an increased amount of child support. He considered the respective incomes of the parties, and the income of Michael's new wife. He also considered the numerous assets owned by Michael.

Additionally, the referee performed the calculations set forth in C.P.Sup.R. 75. He then concluded that Michael's child support payments should be raised to seventy-nine dollars per week per child.

Michael objected to the referee's findings, and a hearing was held before the trial court. The trial court concurred with the findings of the referee. It agreed that any problems regarding visitation were due to Michael's lack of interest in his children. It further agreed that the dependency deduction was

to be determined by Internal Revenue Service regulations, and was not within the jurisdiction of the court.

The trial court also analyzed the increased child support award. The court found that the referee properly considered the income of Michael's new spouse. Furthermore, the court noted that this was not the referee's sole reason for raising the amount of the child support. The trial court observed that it was apparent Michael was trying to hide his true financial status, and concluded the amount of the child support award was proper. Michael appeals.

## Assignments of Error I and II

"I. It is error for a Court of Common Pleas, Division of Domestic Relations to sustain a referee's *Recommendation* to increase a non-custodial parent's weekly child support payments when such increase is based upon the inclusion of a nonparty's gross income to compute 'gross income' pursuant to C.P.Sup.R. 75 III(A)(2); when such nonparty was *not* made a party to the modification hearing and *no* notice was provided to the nonparty and to the noncustodial parent that such nonparty's income would be subject to such inclusion.

"II. It is error for a Court of Common Pleas, Division of Domestic Relations to sustain a referee's *Recommendation* to increase a non-custodial parent's weekly child support payments, when such increase is based upon the inclusion of a nonparty's gross income to compute 'gross income' pursuant to C.P.Sup.R. 75 III(A)(2) and without a specific finding that the nonparty's gross income was 'actually received' by the noncustodial parent." (Emphasis *sic*.)

Since the above-listed assignments of error both deal with the trial court's consideration of the income of Michael's new wife, we will address them together.

Michael's first claim of error is that the income of his new wife should not have been considered since she was not made a party or provided notice. Alternatively, he claims that if his wife's income is considered, it should be limited to the amount which he actually receives.

 First of all, we note the Rules of Superintendence are merely internal housekeeping rules. See *Krupansky v. Pascual* (1985), 27 Ohio App.3d 90, 92, 27 OBR 110, 112, 499 N.E.2d 899, 901. The rules do not give any rights to individual defendants. *State v. Gettys* (1976), 49 Ohio App.2d 241, 243, 3 O.O.3d 286, 287, 360 N.E.2d 735, 737. However, to the extent that the rules are applied, they should be applied correctly and not be used as a

substitute for the judicial discretion mandated by R.C. 3109.05. See *Oyer v. Oyer* (Sept. 19, 1988), Madison App. No. CA88–03–007, unreported, 1988 WL 96624.

■ "It has been held that an increase in income brought about by the remarriage of the non-custodial parent is a factor to be considered in assessing the ability to pay child support." *Snyder v. Snyder* (1985), 27 Ohio App.3d 1, 3, 27 OBR 1, 3, 499 N.E.2d 320, 323. See *Martin v. Martin* (1980), 69 Ohio App.2d 78, 81, 23 O.O.3d 102, 104, 430 N.E.2d 962, 964. Michael argues that this income consideration denied his wife due process by taking her income without affording her notice or an opportunity to be heard. We disagree.

Michael's new wife has not sought to intervene in this action, and it is questionable whether Michael has standing to raise this issue. However, we need not reach this issue because it is apparent that Michael's new wife has not suffered any loss of property. The trial court considered the income of Michael's wife for the purpose of determining the amount of income Michael could pay. Michael's wife is not required to make his child support payments, either directly or indirectly. The trial court's decision was obviously based on the rational conclusion that Michael's marriage to a wage-earning spouse will provide him with additional money for child support that might otherwise be required for his personal household expenses.

■ Michael's second argument is that the trial court should have considered only the amount of his new wife's income which he actually received. It appears that the referee included all of Michael's wife's income on the worksheet. Additionally, the sum of the worksheet calculation was the amount which Michael was ordered to pay. However, the trial court found that the income of Michael's wife was not the sole consideration. The trial court noted that Michael was trying to hide his true financial status, and that the support figure was reasonable.

We find no reason to disturb this determination of the trial court. The Rules of Superintendence are merely guidelines to facilitate the administration of justice. They are not intended to usurp the sound discretion of the trial court. In this case, the court had the opportunity to view the parties and the evidence and determined that Michael's financial status was better than he represented. Nothing in the record disputes this finding. Accordingly, Michael's first and second assignments of error are not well taken.

### Assignment of Error III

"A Court of Common Pleas, Division of Domestic Relations errors [*sic* ] when it sustains a *Recommendation* of a Referee that the court does not

retain jurisdiction to allocate the child dependency tax exemption; when the original divorce decree was silent as to whom would be allowed said deductions for the minor children." (Emphasis *sic.*)

The trial court held that the dependency tax exemption is governed by Internal Revenue Service regulation, and that as a property division it is not subject to the continuing jurisdiction of the court. As set forth below, we do not fully agree.

■ According to federal law, the custodial parent is entitled to the dependency exemption. *Hughes v. Hughes* (1988), 35 Ohio St.3d 165, 167, 518 N.E.2d 1213, 1215. See, also, Section 152(e), Title 26, U.S. Code. However, the custodial parent may waive this exemption in favor of the non-custodial parent. *Id.* Furthermore, at the time of divorce the trial court may award the exemption to either parent as part of the property division. *Hughes, supra,* at 168, 518 N.E.2d at 1216.

■ In certain circumstances, the court can award the dependency exemption to the non-custodial parent even though the parents were never married. See *Bobo v. Jewell* (1988), 38 Ohio St.3d 330, 332, 528 N.E.2d 180, 182. The primary consideration is the best interest of the child. *Id.* The Supreme Court of Ohio has noted the high costs of child care and suggested that the dependency exemption be given to the parent who could most benefit from it. *Id.* This would provide more money overall with which to support the child. Even though they are not married, a child's parents have a joint interest and duty to make maximum use of their tax deductions for the benefit of their child. Justice would not be served by the parents' spiteful failure to minimize their tax burdens at their child's expense.

■ There is no division of property in an action for child support between parents who were never married. The Supreme Court of Ohio has said that in this situation, the trial court may properly award the dependency exemption to either parent in the best interest of the child. Therefore, we conclude that the dependency exemption is a matter concerning the duty of support pursuant to R.C. 3109.05, and not the division of property. See, generally, *Bobo,* 38 Ohio St.3d at 332, 528 N.E.2d at 182. Accordingly, the trial court retains jurisdiction over the award of this exemption during the minority of the child.[1]

---

1. We have considered the case of *Mettler v. Mettler* (1988), 61 Ohio App.3d 14, 572 N.E.2d 127, which was cited by appellant. This case appears to hold that the trial court's jurisdiction over the dependency exemption ends with the termination of the divorce proceeding. The *Mettler* opinion did not mention the decision of *Bobo, supra,* which establishes that the tax deduction is in the nature of child support and not property division.

■ However, our analysis would not be complete without some consideration of the application of this rule. The interplay between state law and federal tax law creates constitutional questions which limit the remedies available to a state court to enforce an award of a dependency exemption. In *Hughes, supra,* the Supreme Court of Ohio noted there might be some difficulty in forcing an unwilling parent to part with his tax exemption. The court suggested that a contempt of court action in state court could be an available remedy.

While contempt is a possible remedy, another alternative is available and possibly preferable in some cases such as this. As an alternative solution, the court may consider the tax exemption when considering the financial resources of the parents pursuant to R.C. 3109.05(A)(2). Where the non-custodial parent would experience the greater tax benefit from the exemption, he should generally receive the exemption. The additional disposable income generated can be considered for additional child support. When the custodial parent refuses to surrender the exemption at the order of the court, the court may reduce the non-custodial parent's support obligation accordingly. See, generally, *Mettler v. Mettler, supra.*

We realize that under this alternate approach the child will still suffer when the custodial parent ignores a court order to relinquish the exemption. It is an unfortunate fact that in support situations the wrongs of the parents often result in suffering to their innocent children. However, reducing the amount of child support paid by the non-custodial parent may, in some cases, be less deleterious to the child than citing the custodial parent for contempt. Therefore, this alternative should be considered when attempting to enforce a court order that the custodial parent relinquish the tax exemption.

■ On remand, the trial court must consider the issue of the tax exemption. It should determine whether the exemption benefits the children best in the hands of Carol or Michael. The trial court can then determine whether any increase or decrease in support is necessary. Any enforcement problems could be handled as discussed above. We reiterate that these decisions are best left to the sound discretion of the trial court.

Accordingly, Michael's third assignment of error is well taken.

### Assignment of Error IV

"A Court of Common Pleas, Division of Domestic Relations errors [*sic*] when it sustains a *Recommendation* by its referee to increase child support pursuant to C.P.Sup.R. 75 and fails to terminate the noncustodial parent's obligation to ' * * * pay for all necessary, medical, hospital, prescription,

dental (including orthodontic) and optical expenses by the minor children.' " (Emphasis *sic.*)

There is nothing in the record which reflects that this issue was ever presented to the trial court. Generally speaking, " * * * [a]n issue which is not raised in the trial court is not proper on appeal." *American Vineyard Co. v. Wine Group* (1984), 20 Ohio App.3d 366, 369, 20 OBR 471, 474, 486 N.E.2d 854, 857. Accordingly, Michael's fourth assignment of error is not well taken.

Michael's first, second and fourth assignments of error are not well taken. His third assignment of error is well taken and on this error we reverse and remand the case to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

REECE, J., concurs.

EDWARD J. MAHONEY, P.J., concurs in judgment only.